ILLINOIS CENT. R. Co. *v.* CHICAGO, B. & N. R. Co.

*(Circuit Court, N. D. Illinois.* January 29, 1886.)

REMOVAL OF CAUSE — FEDERAL QUESTION — CHARACTER OF QUESTION, HOW SHOWN.

> In order to give the circuit court jurisdiction of a case, it must appear from the facts and averments in the record that a federal question is really and substantially involved.

Motion to Dismiss.

*B. F. Ayer* and *John N. Jewett*, for complainant.

*Charles M. Osborn, M. D. Hathaway,* and *Dexter, Herrick & Allen,* for defendant.

GRESHAM, J., *(orally.)* The Chicago, Burlington & Northern Railroad Company commenced a proceeding in November last in the circuit court of Jo Daviess county, under the statutes of Illinois, to condemn part of the right of way which belongs to the Illinois Central Railroad Company. The latter company appeared in the state court, and caused the proceeding to be removed to this court on the ground that it involved a federal question. On the same day that the record was filed in this court, the Illinois Central Company filed a bill against the Chicago, Burlington & Northern Company, to enjoin it from further prosecution of its condemnation proceedings, and from interfering in anywise with the complainant's possession and enjoyment of its right of way. A motion was made by the Chicago, Burlington & Northern Company to dismiss this bill for want of jurisdiction.

In 1850, congress, by an act, granted lands to the state of Illinois to aid in the construction of designated lines of railway within the state as well as for right of way 200 feet wide. The state, by its legislature, accepted this grant for the purposes specified, and subsequently by an act created the Illinois Central Railroad Company, and

conferred upon it power to construct the designated lines of railway and operate the same. The lands granted to the state were by the latter granted to the Illinois Central Railroad Company to enable it to construct the lines of railroad as required by the congressional grant. The railroad company accepted the grant, constructed the lines of railway which the grant called for, and has operated them to the present time. In the act of congress making the grant, it was provided that the United States should have the right to transport troops and munitions of war free of charge over the roads to be constructed, and that the mails should be carried for a compensation to be fixed by congress from time to time. The grant was made for the purpose, in the main, of encouraging settlement, and thus developing the resources of the state and promoting the welfare of the people. It was a grant by the United States to the state on the faith that the latter, as a sovereign, would see that the conditions of the grant were complied with. It was not the intention of congress to provide for the building of lines of railroad within the state of Illinois which should be perpetually maintained for the benefit of the United States.

It is insisted by counsel for the Illinois Central Company, in support of the jurisdiction of the court, that the act of congress became a substantial part of the company's charter, and that the company became directly bound to the United States to perform the conditions of the congressional grant; that the company took the land granted for right of way charged with a use or public trust; and that the company holds it protected against the state's right of eminent domain. I do not think this position is tenable. The United States has parted absolutely with its title to these lands. It has no more interest in them than it has in any other land which it has disposed of. Lands owned by the United States within a state, and not held for a public purpose, are subject to the state's right of eminent domain and taxation, the same as lands owned and held by individuals. It is only such land as the United States owns and holds within the states, and upon which it maintains public buildings, arsenals, forts, etc., that are exempt from state authority and taxation. The United States does not own or hold the right of way in question in any sense, and it certainly has no such interest in the right of way as denies to the state the right to take it for necessary public uses. *U. S.* v. *Railroad Bridge Co.,* 6 McLean, 517; *Union Pacific Ry. Co.* v. *Burlington & M. R. R. Co.,* 3 Fed. Rep. 106.

It is true that the Illinois Central Company in its bill avers that, under the act of congress making the grant, its right of way is not subject to the state's right of eminent domain; but the mere assertion of the right is not of itself sufficient to confer jurisdiction upon this court. The court must see from the facts and averments in the record that a federal question is really and substantially involved, and no such question is presented in this case.

It will be observed that the United States is not complaining of the proposed action on the part of the state. It is the Illinois Central, a creature of the state, which denies the right of the state to exercise the asserted authority over the right of way. This corporation acquired its rights, including right of way, directly from the state. It is responsible to the state and not to the United States. It cannot be assumed that the state of Illinois, in accepting the congressional grant, intended to relinquish absolutely its authority over so large a portion of territory as was granted for the right of way.

I hold that it does not appear from the bill or the proceedings in condemnation that there is a real and substantial controversy, involving a construction of the congressional act of 1850, and the bill is therefore dismissed.